United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRAIG LYNN ALLUMS, | No. C 13-01496 WHA |
| Plaintiff, | |
| v. | **ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |
| CAROLYN W. COLVIN, | |
| Defendant. | |

## INTRODUCTION

In this social security appeal, this order finds the administrative law judge did not err in her decision to deny benefits to claimant. Accordingly, claimant's motion for summary judgment is **DENIED** and defendant's cross-motion for summary judgment is **GRANTED**.

## STATEMENT

**1.    PROCEDURAL HISTORY.**

On January 18, 2011, claimant Craig Lynn Allums applied for disability insurance benefits, alleging he was unable to work since September 18, 2006, due to mild brain atrophy; mild to moderate-sized right lacunar infarct; status post-surgical removal of a pituitary mass; adjustment disorder with anxiety; factitious disorder; cognitive disorder; and status post-radiation therapy for prostate cancer (AR 26–27). Claimant was insured through December 31, 2011. His application was denied both initially and upon reconsideration. An administrative hearing was timely requested (AR 18).

On January 24, 2012, claimant had a hearing before ALJ Carolyn H. Beers (AR 38–78). The ALJ rendered a decision on April 13, 2012, finding that claimant was not disabled (AR 21–32). Claimant requested administrative review (AR 89). The Appeals Council denied the request (AR 1). Claimant filed an action before this Court on April 3, 2013, seeking judicial review pursuant to 42 U.S.C. 405(g). The parties now make cross-motions for summary judgment.

**2.    TESTIMONY AT THE ADMINISTRATIVE HEARING.**

At the hearing before the ALJ, claimant testified that he was 56 when he stopped working in 2006. His only past relevant work experience was as a truck driver (AR 31). Claimant lost his license after failing to pay a ticket for driving an overweight truck (AR 50–52). The record indicates, however, that, at the time, claimant was having trouble remembering things and following instructions (AR 275). According to claimant's brother, Jerry Allums, the trucking company was having to track him on his deliveries and having to put directions in writing because claimant was driving to the wrong locations and getting lost in transit (AR 275).

On February 3, 2011, Jerry Allums took claimant to see a doctor because he had become concerned about claimant's behavior. A head CT showed three abnormalities: (1) a mass in the sellar/supracellar area; (2) prominent sulci and ventricles for age; and (3) a remote lacunar infarct involving the right lentiform nucleus (AR 50–52, 630). A follow-up MRI identified the mass in the supracellar area as a probable pituitary tumor (AR 626). The MRI also demonstrated mild brain atrophy, a mild to moderate sized right lacunar infarct (or stroke), and a small area of signal dropout which could reflect an old hemorrhage (AR 626–27).

Claimant was referred to the Center for Pituitary Disorders at the University of California San Francisco for microsurgery in August 2011, to remove the pituitary tumor (AR 676–78). That surgery alleviated the danger from the pituitary tumor, but cognitive problems from two previous strokes continued.

Jerry Allums submitted a letter for the hearing detailing the difficulties his brother has in his daily life. His brother stated that his claimant's "capacity to remember and recall facts has

2

been greatly diminished" (AR 306). While claimant may be able to recall in great detail certain events that happened years ago, he has difficulty recalling more recent activities (AR 306–07). Jerry Allums stated that claimant's ability to process information has also deteriorated and he is often confused even by the simplest of tasks. Jerry Allums reported that instructions for a task must be repeated several times, and claimant must be made to repeat the instructions back (AR 272).

According to his family, claimant has little insight into his cognitive impairments and does not admit that he is mentally disabled (AR 275). His brother stated that claimant feels that he is capable of working, driving a passenger bus or delivery truck, and generally returning to full-time employment with no problems (AR 306). His family, however, is doubtful that claimant can hold a job and are concerned for his safety if he were to reenter the workforce (AR 275).

### 3. MEDICAL EVIDENCE.

The medical evidence was summarized in the ALJ's decision (AR 21–32). This order will also briefly review both claimant's self-reported symptoms and the findings of each physician who examined him after he filed his application for benefits in January 2011.

With regards to claimant's physical condition, the ALJ gave "great weight" to the claimant's treating oncologist, Dr. Henry Wong (AR 29). In February 2009, Dr. Wong found that claimant is capable of medium exertional work, with possible fatigue and diarrhea from radiation therapy, but no limits in physical activity (AR 491–92). The ALJ found this assessment to be consistent with the report of consultative internist Dr. Charandang, who also opined that claimant is capable of the full range of medium work. (AR 554–56). In addition, these medical reports are supported by the claimant's treatment records, which do not indicate ongoing physical impairment (AR 492–96).

The crux of claimant's application for benefits, however, involves his alleged mental limitations. Claimant's CT and MRI scans from March and April of 2011, respectively, revealed mild brain atrophy and an old mild-to-moderate sized right lacunar infarct.

In considering claimant's functional status, the ALJ gave "great weight" to the assessment of consultative examiner Dr. Prosie (AR 506–08, 699–702). Dr. Prosie, a licensed psychologist, examined claimant on two occasions and administered a battery of tests in both examinations. In his first examination in February 2010, Dr. Prosie found that claimant: (1) demonstrated an intact ability to understand and remember simple instructions; (2) revealed an intact ability to carry out spoken instructions with adequate concentration; (3) interacted well with other persons, which may extend to prospective supervisors, coworkers and strangers in a work place; and (4) seemed capable of adapting adequately to common workplace requirements, hazards, and changes of routine (AR 508). Furthermore, Dr. Prosie found that claimant's test scores were "diminished by interludes of factitious responding" (*ibid.*).

In December 2011, claimant's attorney referred him to Psychologist, Dr. Lisa Kalich, for another evaluation (AR 688). The ALJ found it notable that claimant's attorney "only sent those reports he believed would be most advantageous to the claimant," and "did not forward the prior consultative report by Dr. Prosie, which suggested that the claimant had some invalid test scores due to factitious responding, and that the claimant's abilities were greater than otherwise displayed in testing" (AR 29). After applying a test for malingering, Dr. Kalich found that "[claimant's] scores were consistent with genuine responding" (AR 693). Dr. Kalich also found that since Dr. Prosie's examination, claimant "has experienced a decline in cognitive functioning" (AR 694). She found that: (1) he would have difficulty performing even simple, repetitive tasks; (2) his ability to maintain attention was poor; and (3) the pace at which he was able to perform work fell in the "extremely low range" (AR 688–97).

In February 2012, in a post-hearing examination, Dr. Prosie completed a second set of psychological tests, which again indicated that claimant's abilities were greater than his test results revealed (AR 699–702). In addition, Dr. Prosie had the opportunity to review claimant's radiographic reports and the evaluation by Dr. Kalich. Dr. Prosie interpreted claimant's psychological capabilities and found his ability to follow (1) simple instructions; (2) simple tasks and make simple decisions; (3) to follow complex instructions; and to (4) maintain social

4

interaction all unimpaired. His ability to complete complex tasks, make complex decisions, and his psychological adaptability were found to be minimally impaired (AR 702). In her decision, the ALJ noted that Dr. Prosie's findings were consistent with the mental status examination administered in February 2011, in which claimant scored 30/30 (AR 636). Treatment notes from the same date, however, indicate the that claimant's brother reported being very concerned about his mental status, indicating a difference of opinion between the testing and claimant's family's assessments.

## ANALYSIS

### 1. LEGAL STANDARD.

A decision denying disability benefits must be upheld if it is supported by substantial evidence and free of legal error. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is "more than a scintilla," but "less than a preponderance." *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ibid.* The Court must "review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion." *Andrews*, 53 F.3d at 1039. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities;" thus, where the evidence is susceptible to more than one rational interpretation, the decision of the ALJ must be upheld. *Ibid.*

Claimant has the burden of proving disability. *Id.* at 1040. Disability claims are evaluated using a five-step inquiry. 20 C.F.R. 404.1520. In the first four steps, the ALJ must determine: (1) whether the claimant is working, (2) the medical severity and duration of the claimant's impairment, (3) whether the disability meets any of those listed in Appendix 1, Subpart P, Regulations No. 4, and (4) whether the claimant is capable of performing his or her previous job; step five involves a determination of whether the claimant is capable of making an adjustment to other work. 20 C.F.R. 404.1520(a)(4)(i)–(v). In step five, "the burden shifts to the Secretary to show that the claimant can engage in other types of substantial gainful work that exists in the

5

national economy." *Andrews*, 53 F.3d at 1040. If the ALJ chooses to use a vocational expert, hypothetical questions asked "must set out all of the claimant's impairments." *Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001) (internal citation omitted).

The use of the medical-vocation guidelines, at step five is proper "where they *completely and accurately* represent a claimant's limitations" and the claimant can "perform the *full* range of jobs in a given category." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999) (emphasis in original). Although "the fact that a non-exertional limitation is alleged does not automatically preclude application of the grids," the ALJ must first determine whether the "claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations." *Id.* at 1102.

### 2. THE ALJ'S FIVE-STEP ANALYSIS.

In his decision, the ALJ found at step one of the sequential evaluation process that claimant had not engaged in substantial gainful activity since the date of his benefits application (AR 26). At step two, the ALJ decided that claimant had the following severe impairments: (1) mild brain atrophy; (2) mild to moderate-sized right lacunar infarct; (3) status post-surgical removal of pituitary mass; (4) adjustment disorder with anxiety; (5) factitious disorder; (6) cognitive disorder; and (7) status post-radiation therapy for prostate cancer (AR 27). At step three, the ALJ decided that claimant did not have a disability that met any of those listed in Appendix 1, Subpart P, Regulations No. 4 (AR 27). At step four, the ALJ determined that claimant was unable to perform his past relevant work (AR 31). At step five, the ALJ determined that claimant was able to engage in other types of substantial gainful work that exists in the national economy (AR 31). The ALJ found that claimant had the residual functional capacity to perform the full range of medium work. Thus, a finding of "not disabled" was directed by Medical-Vocational Rule 203.29 and Rule 203.22. The ALJ, however, also found that claimant's ability to perform all, or substantially all, of the requirements of this level of work was impeded by additional limitations (AR 31–32). To determine the extent to which these limitations eroded the unskilled medium occupational base, through the date of last insured, the ALJ asked a

1 vocational expert whether jobs existed in the national economy for an individual with claimant's
2 age, education, work experience, and residual functional capacity.  The vocational expert testified
3 that given all of these factors, claimant would be able to perform the requirements of several
4 unskilled occupations such as:  (1) hand packer; (2) automobile detailer; (3)
5 housekeeping/cleaner; and (4) assembler of small products (AR 32).

Claimant now argues that substantial evidence did not support the ALJ's findings in a number of respects, including:  (1) failing to properly consider lay witness evidence; (2) the ALJ did not provide specific, cogent reasons for disbelieving the claimant's testimony; (3) the ALJ's hypothetical to the vocational expert was improper; (4) the ALJ did not allow claimant's attorney to question the vocational expert; (5) the Appeals Council did not properly evaluate the opinion of treating physician Dr. Shah.

### 3. THE ALJ DID NOT ERR.

For the following reasons, this order finds that the ALJ did not err in her decision to deny benefits to claimant.

#### A. The ALJ properly considered the lay witness evidence.

Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.1996).  The Code of Federal Regulations Section 404 states:

> (3) Consideration of other evidence.  Since symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, we will carefully consider any other information you may submit about your symptoms.  The information that you, your treating or nontreating source, or other persons provide about your pain or other symptoms (*e.g.*, what may precipitate or aggravate your symptoms, what medications, treatments or other methods you use to alleviate them, and how the symptoms may affect your pattern of daily living) is also an important indicator of the intensity and persistence of your symptoms.

Our court of appeals has held that lay witness testimony cannot be disregarded without comment. *Nguyen*, 100 F.3d at 1467.  The ALJ, however, need not discuss every witness's testimony on a individualized, witness-by-witness basis.  Rather, "if the ALJ gives germane

7

1  reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when
2  rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th
3  Cir. 2012).

4      Claimant argues that the ALJ's decision completely ignored the detailed statements from claimant's family describing his impaired memory and processing speed and his lack of insight into his cognitive symptoms. Not so. The ALJ's decision specifically accounts for these statements:

> Dr. Prosie's findings are supported by other evidence in the record, including a February 2011 mini mental status examination in which the claimant scored 30/30 . . . . However, treatment notes from the same date indicate that the claimant's brother reported being very concerned about the claimant's mental status. The claimant's brother reported episodes of dangerous behavior and forgetfulness, such as leaving the stove on and forgetting to flush the toilet, which subsequently caused flooding in the house.

(AR 30).

    Furthermore, the hearing record demonstrates that the ALJ gave claimant's witnesses an opportunity to submit their opinions. The transcript from the hearing includes the following passage:

> ALJ: . . . Well at this point I don't have, I'm out of time for a witness. I do have Jerry Allums statement in the file. I'm happy to hold the record open if you want to provide one by Berry [Allums].
>
> ATTY: I don't think I want to provide any, you know, in terms of written statements I think that the written statements, it would just b (sic) redundant to submit more written statements.
>
> ALJ: Okay.
>
> ATTY: They're here if you want to like hear from them but it seems like we don't.

(AR 76–77).

    In a corollary argument, claimant contends that the brothers' testimony highlighted the lack of insight that claimant had into his own cognitive impairment and should have been afforded more weight in the ALJ's decision. It is true that the brothers' statements paint a more dire picture than the one claimant paints himself (*compare* AR 266–75, 306–08, 276–83, 56–62).

8

1   This is not to say, however, that the ALJ found the claimant's brothers' statements convincing. In
2   fact, she explicitly found the brothers' statement to be directly contradicted by a mental status
3   examination administered on the same day the statements were given, in which claimant scored
4   30/30 indicating "excellent" mental status (AR 30, 636). Contrary to claimant's contention, the
5   evidence demonstrates that the ALJ did in fact consider the brothers' statements. Accordingly,
6   there was no legal error.

**B.      The ALJ properly evaluated claimant's credibility.**

8   The ALJ's findings are entitled to deference if they are supported by substantial evidence
9   and are "sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the
10  claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's
11  testimony regarding [subjective symptoms]." *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir.
12  1991).

13  The ALJ provided the following reasons for finding claimant's testimony not credible to
14  the extent that it suggested he was unable to work: *First*, the tests administered by Dr. Prosie,
15  both before and after the hearing, implicated that claimant's mental abilities were greater than his
16  test results revealed (AR 29). *Second*, claimant scored a perfect 30/30 on a mental status
17  examination indicating an "excellent" mental status (AR 30, 636). *Third*, during the hearing, the
18  ALJ noted that claimant demonstrated a good memory while recounting the details and events of
19  his past, such as incidents in his past truck driving work history (AR 28, 48–55). *Fourth*, the ALJ
20  gave less weight to the opinions of Dr. Kalich whose correspondence "appears to take an
21  advocacy stance and diverge from the actual test results she characterized in her initial report"
22  (AR 30). *Fifth*, the ALJ discounted claimant's declaration of severe mental restrictions where he
23  also demonstrated an ability to carry on activities of daily living such as performing his daily
24  hygiene, taking public transportation on his own, drive, going to church, and follow the storyline
25  of television shows (AR 30, 46–48, 56–62). An ALJ may consider a claimant's daily activities
26  when evaluating the credibility of his disability claims. *See Tommasetti v. Astrue*, 533 F.3d 1035,
27  1039 (9th Cir. 2008). *Sixth,* the vocational expert, testified that an individual with claimant's

9

1 residual functional capacity, while not able to perform his past relevant work, was able to perform
2 the requirements of representative unskilled occupations (AR 32).
3 Based on the evidence present in the record, the ALJ's findings are supported by
4 substantial evidence and are sufficiently specific to be entitled to deference. Accordingly, this
5 order holds that the ALJ did not arbitrarily discredit claimant's testimony, but rather weighed it
6 against the extensive evidence demonstrating that claimant is capable of performing the work
7 identified by the vocational expert.

**C.    The ALJ's hypothetical to the vocational expert was proper.**

If a claimant does not have the residual functional capacity to perform past relevant work, then it is the Commissioner's burden at step five to establish that the claimant can perform other work. *Gamer v. Secretary of Health and Human Servs.*, 815 F.2d 1275, 1278–79 (9th Cir. 1987). The ALJ may use a vocational expert, as did the ALJ in this case, to determine whether a claimant can use his work skills in another job. Hypothetical questions asked of the vocational expert must "set out all of the claimant's impairments." *Gamer*, 815 F.2d at 1279. If the record does not support the assumptions in the hypothetical, the vocational expert's opinion has no evidentiary value. *Ibid*.

Here, ALJ painted the following three hypotheticals for the vocational expert:

[ALJ]:  Alright, so let's assume we have an individual who is of the claimant's age and he would be —

ATTY:  53.

\*          \*          \*

[ALJ]:  And then around 2008 he turns into an individual closely approaching advanced age, education and work history who can perform medium work. He can lift and carry 25 pounds frequently and 50 pounds occasionally. This individual can sit for six hours out of an eight hour workday and can walk and/or stand for six hours. This individual can perform simple tasks that are consistent with SVP 2 entry level work. This individual can make simple work related decisions with occasional work place changes. And this individual wouldn't be able to maintain public contact. Would — I'm assuming this individual not be able to do the claimant's past work.

[Vocational Expert]:  That's correct.

10

1    [ALJ]: Okay, are there other jobs at the medium and light levels that
     such an individual could do?

2    [Vocational Expert]: Yes, your honor . . . .

                    *          *          *

3    [ALJ]: All right and then let's assume we have an individual . . .
     where everything in the first hypo[thetical] is the same but it's an
     individual who can't have any changes in the work place[.] That the
     job is going to be the same job in and out, day in, day out, no changes.
     Would that make a difference in the jobs you cited?

                    *          *          *

4    [ALJ]: All right and then my last hypothetical let's assume we have
     somebody who old (sic) be able to work 45 minutes out of each hour
     . . . . that would be on a sustained basis. Would that preclude all
     work?

5    [Vocational Expert]: It would.

Claimant contends that these hypotheticals were improper because "the ALJ did not describe Mr. Allums' limitations in remembering and carrying out instructions, using judgment, or following supervision" (Reply Br. 7). Furthermore, claimant argues that the ALJ's hypotheticals merely "describ[ed] limitations [] consistent with the performance of a class of jobs," *i.e.* SV2 status, and "not a function-by-function description" of claimant's condition (*ibid.*).

This order disagrees. The hypotheticals presented to the vocational expert included all of the limitations that the ALJ accepted as true in her residual functional capacity assessment (*compare* AR 27–28, *with* AR 69). Claimant seems to object to the fact that the ALJ did not include limitations as described by family members and certain experts, which the ALJ expressly determined conflicted with the more credible testimony of other experts. Where there is more than one rational interpretation of the evidence, however, the ALJ's conclusion must be upheld. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

In support of his position, claimant cites two decisions, neither of which are analogous to the facts here. In *Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001), the ALJ rejected a vocational expert's response to a hypothetical because it included the opinions of the treating

11

psychologist, who the ALJ disagreed with.  The undersigned judge held that without the contradicting opinion of any other doctor, an ALJ must demonstrate "clear and convincing" reasons supported by substantial evidence in order to reject a treating doctor's medical opinion. Here, the ALJ weighed evidence from a multitude of examinations, treating physicians and lay testimony.  Her conclusions were grounded in substantial evidence.

In *Hall v. Secretary of Health, Education & Welfare*, 602 F.2d 1372, 1375 (9th Cir. 1979), where there was no report by a vocational expert and the ALJ simply took judicial notice of the fact that sedentary jobs existed in the national economy.  Here, the ALJ presented a proper hypothetical to a vocational expert who determined that claimant was capable of performing jobs in the national economy.  Accordingly, the authority cited by claimant is not persuasive.

### D. The cross-examination of the vocational expert was proper.

Claimant further argues that he was denied due process when his counsel was prevented from posing a hypothetical to the vocational expert that focused on "impaired processing speed and pace" (Br. 15).  Claimant's argument is not meritorious.

The ALJ crafted three hypotheticals for the vocational expert, the third of which incorporated the opinions of claimant's chosen expert, Dr. Kalich.  The ALJ specifically asked the vocational expert whether someone off-task for 15 minutes of every hour would be able to find work.  This hypothetical is consistent with the medical reports of Dr. Kalich, who focused on claimant's impaired processing speed and pace (AR 696–97).  In response to this hypothetical, the vocational expert stated that there would be no jobs available to claimant. Thus, claimant has failed to demonstrate that he was prejudiced.

Claimant argues that his counsel was prevented from raising his own hypothetical that incorporated all of his "limitations as defined by Dr. Kalich" (Reply Br. 7).  Claimant states that counsel was unable to ask a hypothetical involving "impaired processing speed and pace," however, this evidence was the basis for the ALJ's third hypothetical.  Claimant does not elaborate on what medical evidence was not already presented to the vocational expert within the ALJ's hypotheticals.  The ALJ did stop counsel several times while he attempted to form his

12

own hypothetical, however, this occurred because counsel's hypotheticals were unclear or already incorporated into those presented by the ALJ, not because they presented new medical evidence. Accordingly, the hypotheticals put to the vocational expert included all the medical evidence, even evidence beyond what the ALJ found supported by substantial evidence.

### E. New Evidence.

After the ALJ issued a written decision denying claimant's request for benefits, claimant submitted a request for review of the ALJ's decision to the Appeals Council. During this period, claimant submitted a report from his primary care physician, Dr. Shah (Dkt. No. 10, Exh. A). The Appeals Council, however, declined to consider Dr. Shah's report, concluding that the opinions contained within concerned a time *after* claimant's insured date of December 31, 2011 (Opp. 14 n.5). The Appeals Council denied claimant's request for review, finding no basis for challenging the ALJ's decision. Claimant now argues that Dr. Shah's letter did concern claimant's condition prior to his insured date and that the Appeals Council erred in not reviewing the letter.

As an initial matter, the Commissioner argues that the Appeals Council's decision denying claimant's request for review is itself unreviewable (Opp. 15). When the Appeals Council denies a request for review, it is a non-final agency action not subject to judicial review because the ALJ's decision becomes the final decision of the Commissioner. *See Klemm v. Astrue*, 543 F.3d 1139, 1144 (9th Cir. 2008).

Here, however, our review concerns only whether Dr. Shah's letter concerned the relevant time period and whether the Appeals Council had a duty to consider that evidence. Our court of appeals has held that "where the Appeals Council was required to consider additional evidence, but failed to do so, remand to the ALJ is appropriate so that the ALJ can reconsider its decision in light of the additional evidence." *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1233 (9th Cir. 2011). The applicable federal regulation states, "if new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it

13

relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. 404.970(b).

According to claimant, the Appeals Council improperly rejected Dr. Shah's evaluation because the Appeals Council believed that it concerned Dr. Shah's medical views after December 31, 2011, when claimant's disability insurance coverage expired. Claimant argues that because much of the medical evidence that Dr. Shah referenced in his evaluation existed before the expiration of claimant's disability coverage, the Appeals Council was obligated to consider the evidence.

This order disagrees. Nowhere in Dr. Shah's evaluation did he indicate that his determination applied to the period before the expiration of insurance coverage. Dr. Shah stated that it is "unlikely that Mr. Allums will be able to hold a full-time job" and that he did "not believe this patient would be able to obtain gainful employment" (Dkt. No. 10, Exh. A). There is no evidence to demonstrate that the Appeals Council erred in determining that the evaluation was applied to the period *after* claimant's disability insurance coverage expired. If Dr. Shah had intended to express such an opinion, he should have done so explicitly. Thus, the determination of the Appeals Council must be upheld. Claimant has the opportunity to reapply for disability benefits and include Dr. Shah's evaluation, if he so wishes.

## CONCLUSION

For the foregoing reasons, claimant's motion for summary judgment is **DENIED** and defendant's cross-motion for summary judgment is **GRANTED**. Judgment will be entered accordingly.

**IT IS SO ORDERED.**

Dated: February 25, 2014.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

14